UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THE HUMAN RIGHTS DEFENSE CENTER; and MICHELLE DILLON, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY; and U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, <br><br> Defendants. | C18-1141 TSZ <br><br> ORDER |

THIS MATTER comes before the Court on the Motion for Summary Judgment ("Motion"), docket no. 29, brought by Plaintiffs The Human Rights Defense Center ("HRDC") and HRDC employee, Michelle Dillon. Having reviewed all papers filed in support of, and in opposition to, the Motion, the Court enters the following Order.[1]

**Background**

The material facts in this case are not in dispute. HRDC, formerly known as Prisoners' Legal News, is a non-profit organization that advocates for the human rights of

---

[1] Because the relevant facts and legal issues are adequately presented in the briefs and supporting documents, the request for oral argument is denied.

ORDER - 1

people held in U.S. detention facilities. Wright Decl. at ¶¶ 2–3 (docket no. 31). On March 20, 2018, Dillon submitted a request for information on behalf of HRDC to Defendant U.S. Immigration and Customs Enforcement ("ICE"), pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq*. *See* FOIA Request, Ex. A to Wright Decl. (docket no. 31 at 7). HRDC's request sought the following documents:

> [C]ertain records regarding litigation against ICE and its employees or agents created from January 1, 2010 until [March 20, 2018]. In cases except those involving traffic-related claims, HRDC limit[ed] its request to claims and cases which the government paid $1,000 or more . . . . In traffic-related claims, HRDC limit[ed] its request to those in which the government paid greater than $50,000.

*Id.* For each "claim" or "case," HRDC requested (i) the complaint or claim form and any amended versions, (ii) the verdict form, final judgment, settlement agreement, consent decree, or other paper resolving the case, and (iii) a record showing the amount of money involved in resolving the case or claim and to whom the money was paid. *Id.*

On April 2, 2018, ICE acknowledged receipt of HRDC's FOIA request. *See* Record, Ex. 2 to Pineiro Decl. (docket no. 34-2). ICE invoked the statutory 10-day extension to respond to the FOIA request, explaining that HRDC's request sought "numerous documents that [would] necessitate a thorough and wide-ranging search." *Id.* ICE also invited HRDC to narrow the scope of its request. *Id.*

On April 25, 2018, ICE emailed Dillon, requesting that HRDC "redefine [its] request by narrowing what type of litigation [it is] seeking" and by "narrow[ing] the time frame of [its] request." *See* April 2018 Emails, Ex. 3 to Pineiro Decl. (docket no. 34-3). ICE's email also indicated that "most of what [HRDC is] seeking can be found on

ORDER - 2

http://www.pacer.gov/." *Id*.  The next day, Dillon responded to ICE's email, stating that HRDC is "still requesting those documents be provided from ICE through FOIA," despite their availability online, and that HRDC "decline[s] to narrow [its] request in any other way." *Id.*

On June 20, 2018, ICE denied HRDC's FOIA request.  Decision, Ex. 5 to Pineiro Decl. (docket no. 34-5).  ICE determined that the FOIA request was "too broad in scope, did not specifically identify the records which [HRDC is] seeking, and only posed questions to the agency." *Id*.  On August 3, 2018, HRDC filed an action in this Court.  *See* Complaint (docket no. 1).[2]

In March 2019, the parties filed a Joint Status Report ("JSR"), docket no. 17, in which "Defendants acknowledge[d] that [Plaintiffs] are entitled to the requested records," subject to any applicable FOIA exemptions, and that the parties were "conferring regarding a rolling production schedule."  JSR at ¶ 1.  In September 2020, Defendants purported to complete its production of records that were responsive to HRDC's request.  *See* Final Response Letter, Ex. G to Wright Decl. (docket no. 31 at 26–27).  ICE, however, invoked two exemptions under §§ 552(b)(6) and 552(b)(7)(C), known as Exemptions 6 and 7(C), to justify the redaction of names, email addresses, and phone numbers of ICE employees and other individuals contained within the records.  *Id.*

---

[2] On June 26, 2018, HRDC appealed the denial of its FOIA request.  HRDC Appeal, Ex. 6 to Pineiro Decl. (docket no. 34-6).  Three days after Plaintiffs brought this lawsuit, on August 6, 2018, ICE responded to HRDC's appeal, affirming its prior decision not to process the FOIA request.  Decision on Appeal, Ex. 7 to Pineiro Decl. (docket no. 34-7).  In affirming its prior decision, ICE again determined that HRDC's request was "vague, overbroad, and unduly burdensome." *Id.*

ORDER - 3

HRDC challenged the redaction of litigants' names in a single document that was produced by ICE: the "Stipulation for Compromise Settlement and Release of Federal Tort Claims Act Claims Pursuant to 28 U.S.C. § 2672" ("Settlement").  *See* Redacted Settlement, Ex. 8 to Pineiro Decl. (docket no. 34-8).  HRDC's counsel purportedly made several attempts to persuade ICE to consider removing the redactions contained in the Settlement.  *See* Stahl Decl. at ¶ 3 (docket no. 30).  In December 2020, ICE informed HRDC that it was "unwilling to release this information" based on its "position that this information is covered by the Privacy Act and FOIA exemptions."  December 2020 Emails, Ex. J to Stahl Decl. (docket no. 30 at 5).[3]

In February 2021, the Court entered the parties' stipulation to strike the trial date and all related deadlines, *see* Minute Order (docket no. 28), based on the parties' representations that the issues involved in this case could either "be resolved without the Court's intervention" or "on a dispositive motion, without the need for trial."  Stipulation at ¶ 3 (docket no. 27).  HRDC then filed this Motion, docket no. 29.

**Discussion**

    1.    **Summary Judgment Standard**

The Court shall grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

---

[3] ICE subsequently produced another version of the Settlement, which newly redacted the cause number of the case that the Settlement resolved.  *See* Stahl Decl. at ¶ 4, Exs. K & L (docket no. 30 at 7, 9).  ICE explained that it "inadvertent[ly]" failed to redact the cause number in the earlier version of the Settlement that it had produced.  ICE Supp. Letter, Ex. M to Stahl Decl. (docket no. 30 at 11).

ORDER - 4

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the adverse party must present affirmative evidence, which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn. *Id.* at 255, 257. When the record, taken as a whole, could not, however, lead a rational trier of fact to find for the non-moving party on matters as to which such party will bear the burden of proof at trial, summary judgment is warranted. *See Celotex*, 477 U.S. at 322.

### 2. Redaction of Individuals' Names in Settlement

Plaintiffs first argue that ICE has improperly redacted the litigants' names from the Settlement it produced in response to the FOIA request. Defendants maintain that the redacted names have been properly withheld pursuant to Exemptions 6 and 7(C). In FOIA cases, the government bears the burden of demonstrating that an exemption applies. *See Shannahan v. IRS*, 672 F.3d 1142, 1148 (9th Cir. 2012) (citation omitted). "To justify withholding, the government must provide tailored reasons in response to a FOIA request" and "may not respond with boilerplate or conclusory statements." *Id.* (citation omitted). Nevertheless, the Court "accords substantial weight to an agency's declarations regarding the application of a FOIA exemption." *Id.* (citation omitted).

### A. Exemption 6

Exemption 6 applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

5 U.S.C. § 552(b)(6).[4]  In deciding whether Exemption 6 applies, the Court must first determine whether the disclosure would compromise an individual's "nontrivial" privacy interest.  *See Cameranesi v. U.S. Dep't of Def.*, 856 F.3d 626, 637 (9th Cir. 2017).  The Supreme Court is particularly concerned with privacy invasions that would expose individuals "to lifelong embarrassment" and "disgrace," including "practical disabilities, such as loss of employment or friends."  *Dep't of Air Force v. Rose*, 425 U.S. 352, 377 (1976) (citation omitted).  Nevertheless, individuals have diminished privacy interests in information that is already publicly available.  *See Union Leader Corp. v. U.S. Dep't of Homeland Sec.*, 749 F.3d 45, 53 (1st Cir. 2014).  Likewise, federal government employees' privacy interests are generally diminished when they have been "investigated for misfeasance relating to the performance of official duties."  *Providence J. Co. v. U.S. Dep't of Army*, 981 F.2d 552, 568 (1st Cir. 1992) (citing *Stern v. FBI*, 737 F.2d 84, 92 (D.C. Cir. 1984)).  If a nontrivial privacy interest is at stake, the Court must next determine whether "the public interest sought to be advanced is a significant one and that the information [sought] is likely to advance the interest."  *Cameranesi*, 856 F.3d at 637 (quoting *Lane v. Dep't of Interior*, 523 F.3d 1128, 1137 (9th Cir. 2008)).

      In this case, the litigants whose names have been redacted from the Settlement have a cognizable privacy interest in maintaining the status quo.  That is to say, settling an action based on allegations that ICE employees wrongfully detained U.S. citizens is

---

[4] Plaintiffs do not challenge Defendants' characterization of the Settlement as "similar" to "personnel and medical records."  *See* Motion (docket no. 29 at 13–14).

stigmatizing to both the claimants and the tortfeasors, as both could be subjected to lifelong embarrassment or disgrace.  *See Rose*, 425 U.S. at 377.  The privacy interests at issue here, however, have been diminished for at least two reasons.  First, their names are publicly available on the underlying case docket report, which includes much of the stigmatizing information—i.e., the allegations set forth in the complaint, as opposed to the fact of settlement.  *See Union Leader*, 749 F.3d at 53.[5]  The Settlement itself provides that "[t]he parties agree that this [Settlement], including all terms and conditions . . . , may be made public in their entirety, and the plaintiff expressly consents to such release and disclosure pursuant to 5 U.S.C. § 552a(b)."  Redacted Settlement at ¶ 11, Ex. 8 to Pineiro Decl. (docket no. 34-8 at 6–7).  Second, at least with respect to the ICE employees named in the Settlement, the alleged "misfeasance relating to their official duties" further diminishes any privacy interest in nondisclosure.  *See Providence*, 981 F.2d at 568; *see, e.g.*, *Dobronski v. FCC*, 17 F.3d 275, 280 (9th Cir. 1994) (concluding that a federal government employee "*may* have *some* privacy interests in not being connected to the [alleged] misconduct") (emphasis added).

On the other side of the scale, Plaintiffs point out that "the public has a strong interest in knowing exactly which [ICE] officials were involved in any allegedly wrongful act of detention, as alleged in the lawsuit that led to the payment of public funds disclosed in the Settlement."  Motion (docket no. 29 at 16).  Plaintiffs argue that access to

---

[5] The litigants' names are matters of public record regardless of whether ICE inadvertently disclosed the underlying case's cause number to HRDC.  *See supra*, footnote 3.

ORDER - 7

the ICE employees' identities is necessary to determine whether the "accused are multiple offenders, how much taxpayer money has been used to resolve claims against those [employees], and whether they continue to be employed by ICE." *Id.* Balancing the litigants' diminished privacy interests against the significant interests in public disclosure, the Court concludes that revealing the litigants' names in the Settlement would not constitute a clearly unwarranted invasion of personal privacy, as required under Exemption 6. *See Dobronski*, 17 F.3d at 280 (affirming denial of Exemption 6 and holding "that, given the [government employee's] position in the [agency] and the nature of the records sought, the public interest in uncovering alleged abuse of public monies and public office outweighs the 'minimal' privacy interests involved").

### B.      Exemption 7(C)

Defendants also rely on Exemption 7(C) to justify the withholding of the names in the Settlement. Exemption 7(C) is similar to Exemption 6, but has two differences:  First, Exemption 7(C) is limited to "records or information compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7)(C). Second, Exemption 7(C) is more protective of privacy interests than is Exemption 6 because, to invoke Exemption 7(C), the agency need only show that the production "*could reasonably be expected* to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C) (emphasis added); *see Dobronski*, 17 F.3d at 279.

The Court must first determine whether the Settlement has been "compiled for law enforcement purposes" within the meaning of Exemption 7(C). *Id.* Defendants argue that Exemption 7(C) applies to the Settlement because it relates to "ICE's investigation

1   leading to the detention and ICE's duty to enforce the immigration laws."  Response
2   (docket no. 32 at 16).  The Court rejects such a broad reading of the phrase "compiled for
3   law enforcement purposes."  See *100Reporters LLC v. U.S. Dep't of Justice*, 248
4   F. Supp. 3d 115, 159 (D.D.C. 2017) ("[N]ot every document complied by a law
5   enforcement agency is compiled for a law enforcement purpose.").  Nevertheless, the
6   Court concludes that the Settlement satisfies Exemption 7(C)'s threshold requirement,
7   albeit for a slightly different reason.  The Court is satisfied that the Settlement relates to
8   any files associated with the ICE employees named in the Settlement, or files associated
9   with any potential inquiry into their conduct—conduct which gave rise to the civil
10  lawsuit filed against them.  See *Church of Scientology Int'l v. IRS*, 995 F.2d 916, 919 (9th
11  Cir. 1993) (adopting view that "civil as well as criminal law enforcement activities are
12  within the purview of the exemption"); *see, e.g.*, *Hunt v. FBI*, 972 F.2d 286, 287–88 (9th
13  Cir. 1992) (concluding that a file related to the investigation of a complaint submitted to
14  the FBI's Office of Professional Responsibility alleging employee misconduct was
15  compiled for law enforcement purposes).
16      In concluding that the Settlement satisfies Exemption 7(C)'s threshold
17  requirement, the Court next determines whether the public interest in disclosure still
18  outweighs the litigants' privacy interests, given that Exemption 7(C) affords even greater
19  protection of such privacy interests.  In *Hunt*, for example, the Ninth Circuit concluded
20  that a government employee's privacy interests, when balanced against the public
21  interests, "militate[d] strongly against disclosure" where (i) the employee was a "single,
22  lower-level FBI agent," (ii) "the file indicate[d] no evidence of wrongdoing on the part of
23

ORDER - 9

the [employee]," and (iii) "there [was] little or no public interest served by disclosure of [the] isolated file." 972 F.2d at 290.  Although there are some similar privacy concerns in this case, the Court concludes that at least two of the three factors on which the *Hunt* court relied are not present here.  First, the existence of the Settlement provides at least some evidence of wrongdoing on the part of the ICE employees named in the underlying case and Settlement.  *See Dobronski*, 17 F.3d at 279 (explaining that there need not be "objective proof of the facts to be disclosed" and that "[m]any investigations that uncover government corruption begin with undocumented 'tips'").  Second, for the reasons described in Section 2(A) above, there is a significant public interest in disclosing the identities of the ICE employees, thereby allowing HRDC to assess whether the employees are repeat offenders, whether their conduct has resulted in other expenditures of public funds, or whether they are still employed by ICE.  *Cf. Hunt*, 972 F.2d at 288–89.[6]  Perhaps more critically, there is no indication that the internal investigative file at issue in *Hunt*, or the underlying allegations against that employee, were matters of public record.  In other words, the employee in *Hunt* had a much stronger privacy interest in nondisclosure than do the ICE employees in this case for the simple reason that the stigmatizing information is already publicly available.  Nor is the Court persuaded by Defendants' argument that the fact that ICE employees settled exposes them to even more stigma.  *See* Response (docket no. 32 at 12).

---

[6] As to the third remaining factor, neither party has presented any argument regarding whether the ICE employees named in the Settlement are "low-level" or "high-level" employees.  The Court thus makes no assumptions about these employees' roles within the agency.

ORDER - 10

On balance, the Court concludes that the litigants' privacy interests in this matter do not outweigh the public's interest in disclosure, and that the disclosure thus could not reasonably be expected to constitute an unwarranted invasion of privacy. *See* 5 U.S.C. § 552(b)(7)(C). Absent any applicable exemption or any other relevant facts to be resolved at trial, Plaintiffs are entitled to summary judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The Court GRANTS the Motion on this ground and declares that Defendants' failure to disclose the redacted names in the Settlement violates FOIA.[7] Defendants are required to disclose the requested information within fourteen (14) days of this Order.

### 3. Timeliness of ICE's Response

Plaintiffs also seek summary judgment on their claim that ICE violated FOIA by failing to produce any responsive records in a timely manner. "[I]n the Ninth Circuit, courts sometimes enforce FOIA's timeliness requirements independent of the underlying disclosure issues, at least when the violation is 'egregious' or when there is a 'pattern or practice' of delay." *Munger, Tolles & Olson LLP ex rel. Am. Mgmt. Servs. LLC v. U.S. Dep't of Army*, 58 F Supp. 3d 1050, 1054–55 (C.D. Cal. 2014) (summarizing cases); *see*

---

[7] Defendants previously argued that the redacted names also fell within the protections of the Privacy Act. *See* December 2020 Emails, Ex. J to Stahl Decl. (docket no. 30 at 5). Defendants, however, have appeared to abandon that argument on summary judgment by failing to raise it in their response to the Motion (despite the Motion's discussion of the issue). *See generally* Response (docket no. 32); *see also* Reply (docket no. 35 at 7). Given that Defendants carry the burden of showing that the redacted information is exempt from disclosure, the Court declines to further address this issue. *See Bernstein v. Virgin Am., Inc.*, 365 F. Supp. 3d 980, 985–86 (N.D. Cal. 2019) (concluding that defendant abandoned certain arguments opposing liability on summary judgment).

ORDER - 11

1  *also Long v. IRS*, 693 F.2d 907, 910 (9th Cir. 1982) ("[U]nreasonable delays in disclosing
2  non-exempt documents violate the intent and purpose of the FOIA.").

3        Plaintiffs do not argue that ICE has a pattern or practice of unreasonable delays.
4  *See* Motion (docket no. 29 at 22).  Rather, Plaintiffs argue that "the agency's dilatory
5  response is an egregious violation of FOIA."  *Id.*  The Court disagrees.  Not once did ICE
6  altogether fail to respond to HRDC's FOIA request.  To the contrary, ICE acknowledged
7  the FOIA request within two weeks of receipt and issued its final decision within three
8  months of receipt, after invoking the 10-day extension.  *See* Decision, Ex. 5 to Pineiro
9  Decl. (docket no. 34-5); *cf. Prison Legal News v. U.S. Dep't of Homeland Sec.*, 113 F.
10 Supp. 3d 1077, 1084–85 (W.D. Wash. 2015) ("Plaintiff did not receive ICE's first
11 production of documents (*or any other determination*) until 361 days after mailing its
12 first FOIA request letter.") (emphasis added).  Any delay in issuing the decision was at
13 least in part due to ICE's unsuccessful attempts to narrow the scope and timeline of
14 HRDC's request.  *See* April 2018 Emails, Ex. 3 to Pineiro Decl. (docket no. 34-3).  ICE
15 further responded to HRDC's appeal within six weeks of receipt.  *See* Decision on
16 Appeal, Ex. 7 to Pineiro Decl. (docket no. 34-7); *cf. Munger, Tolles & Olsen*, 58
17 F. Supp. 3d at 1055 (concluding agency's 11-month delay in responding to the appeal
18 constituted an "egregious" delay).

19       Although the parties have spent the last three years disputing the proper scope of
20 the FOIA request and what information may be withheld, the Court is unwilling to
21 conclude that ICE's delays were unreasonable, let alone "egregious."  The Court instead
22 concludes, given that the relevant facts are undisputed, any technical delay on ICE's part

23

ORDER - 12

was reasonable as a matter of law.  *See* 5 U.S.C. §§ 552(a)(6)(A)–(B) (providing up to 30 business days for the agency to respond to a FOIA request or an appeal); Fed. R. Civ. P. 56(a).[8]  The Court therefore DENIES summary judgment on this ground and DISMISSES with prejudice Plaintiffs' claim that ICE violated FOIA by failing to respond in a timely manner.[9]

### 4. Attorneys' Fees and Costs

FOIA provides that a "court may assess . . . reasonable attorneys' fees and other litigation costs reasonably incurred in any case . . . in which the complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E).  "[S]ubstantially prevailed" is broadly defined to include situations where the complainant "has obtained relief through either . . . a judicial order" or "a voluntary or unilateral change in position by the agency."  *Id.* § 552(a)(4)(E)(ii).  Because Plaintiffs have "substantially prevailed" in this matter by obtaining relief through this Order and ICE's earlier change in position, the Court awards Plaintiffs their reasonable fees and costs.  Plaintiffs are DIRECTED to file any motion for attorneys' fees and costs within thirty (30) days of this Order.  Any motion shall be noted in accordance with Local Civil Rule 7(d).

---

[8] Although Defendants did not move for summary judgment on this claim (or any other claim), the Court exercises its discretion to *sua sponte* grant summary judgment in their favor because Plaintiffs have "already had a 'full and fair opportunity to ventilate the issues'" relating to this claim.  *Arce v. Douglas*, 793 F.3d 968, 976 (9th Cir. 2015) (quoting *United States v. Grayson*, 879 F.2d 620, 625 (9th Cir. 1989)).

[9] Generally, "a district court should grant leave to amend even if no request to amend the pleadings was made."  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).  In this case, however, the Court "determines that the pleadings could not possibly be cured by the allegation of other facts," *id.*, particularly in light of the parties' representations that this case may be resolved on a dispositive motion and without the need for further fact development at trial.  *See* Stipulation at ¶ 3 (docket no. 27).

ORDER - 13

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Plaintiffs' Motion, docket no. 29, is GRANTED as to Plaintiffs' claim that Defendants violated FOIA by improperly withholding the names in the Settlement;

(2) Plaintiffs' Motion, docket no. 29, is otherwise DENIED. The Court *sua sponte* GRANTS summary judgment in favor of Defendants as to Plaintiffs' claim that Defendants violated FOIA by failing to timely respond. This claim is DISMISSED with prejudice;

(3) The Court hereby declares that the redaction of names in the Settlement are subject to disclosure under FOIA;

(4) Defendants are hereby enjoined from withholding the redacted names and are ORDERED to produce the unredacted version of the Settlement to Plaintiffs within fourteen (14) days of this Order. *See* 5 U.S.C. § 552(a)(4)(B);

(5) Plaintiffs are awarded reasonable attorneys' fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E), in an amount to be determined; and

(6) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 5th day of April, 2021.

Thomas S. Zilly
United States District Judge